1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   STEPHANIE VEGA and MICHAEL            )   Case No.: 1:14-cv-1790 –JLT
     McNATT, individually and behalf of all    )
12   others similarly situated,             )   ORDER GRANTING PLAINTIFFS' MOTION
                                            )   FOR PRELIMINARY APPROVAL OF CLASS
13               Plaintiffs,                 )   SETTLEMENT
                                            )
14         v.                                )   (Doc. 67)
                                            )
15   WEATHERFORD U.S., LIMITED              )
     PARTNERSHIP, et al.,                    )
16                                          )
                 Defendants.                 )
17   ─────────────────────────────          )

18         Plaintiffs Stephanie Vega and Michael McNatt request preliminary approval of the class

19   settlement with Defendants.  (Doc. 67)  By and through this motion, Plaintiff seeks: (1) conditional

20   certification of settlement classes; (2) preliminary approval of the settlement terms; (3) appointment of

21   Plaintiffs as the class representatives; (4) appointment of Hernaldo Baltodano of Baltodano &

22   Baltodano LLP, and Paul Haines, Tuvia Korobkin and Fletcher Schmidt of Haines Law Group as Class

23   Counsel; (5) approval of the class notice and related materials; (6) appointment of Rust Consulting,

24   Inc., as the claims administrator; and (7) scheduling for final approval of the settlement.    Defendants

25   do not oppose the motion for preliminary approval of the class settlement.  (Doc. 69)

26         The Court has considered the proposed settlement agreement between the parties, and the

27   proposed Class Notice and documents.  For the following reasons, Plaintiff's motion for preliminary

28   approval of class settlement is **GRANTED**.

                                              1

**<u>BACKGROUND</u>**

Plaintiffs Stephanie Vega and Michael McNatt were employees at Defendants' Bakersfield, California location.  (Doc. 44 at 5, ¶11)  Ms. Vega was a full-time non-exempt employee between September 2011 and September 2013.  (*Id.*)  She was then promoted to a full-time exempt position, which she retained until May 2014.  (*Id.*)  Mr. McNatt was employed as a full-time hourly employee between September 2012 and July 2013.  (*Id.*)

Plaintiffs assert that non-exempt hourly employees "regularly worked shifts in excess of 8 hours per day and/or 40 hours per week.  (Doc. 44 at 5, ¶ 13)  Plaintiffs contend Defendants "underpaid all of their required overtime wages."  (*Id.* at 6, ¶ 14)  In addition, Plaintiffs allege Defendants maintained unlawful break policies, and "failed to authorize and permit…hourly non-exempt employees with all rest breaks to which they were entitled."  (*Id.*, ¶ 15)  Similarly, Plaintiffs assert Defendants "failed to provide legally compliant meal periods...by failing to schedule timely meal periods and failing to ensure adequate coverage so as to not impede and/or discourage Plaintiffs and hourly non-exempt employees from taking legally compliant meal periods."  (*Id.* at 7, ¶ 16)  Further, Plaintiffs assert Defendants failed to pay all final wages within 72 hours of the end of their employment due to the wage, rest break, and meal break violations.  (*Id.*, ¶ 17)

Based upon these factual allegations, Plaintiffs contend Defendants are liable for failure to pay overtime wages in violation of Cal. Labor Code §§ 204, 510, 558, 1194 and 198; violations of the Fair Labor Standards Act, 29 U.S.C. § 201; violations of the meal and rest break provisions of Cal. Labor Code § 226.7, 512, 516 and 558; wage statement penalties under Cal. Labor Code § 226; waiting time penalties under Cal. Labor Code §§ 201-203; unfair competition under Cal. Bus. & Prof. Code § 17200; and civil penalties under the Private Attorneys General Act, Cal. Labor Code § 2698.  (*See* Doc. 44)

On April 30, 2015, the parties stipulated to conditional class certification for the FLSA claims only (Docs. 37, 38), and provided notice to the putative class members.  (Doc. 67-1 at 16)  According to the parties, following a 75-day notice period, 865 individuals opted into the action. (*Id.* at 8)

In November 2015, the parties agreed to attend mediation, and the Court stayed all deadlines pending mediation. (Docs. 55, 56)  The parties attended a full-day of mediation with Mark Rudy on March 24, 2016, after which "Mr. Rudy made a mediator's proposal for a class-wide resolution of all

claims." (Doc. 56 at 15) The parties accepted the proposal, and filed a Notice of Settlement with the Court on April 12, 2016. (Doc. 61) On June 8, 2016, Plaintiffs filed the motion for preliminary approval of the class action settlement (Doc. 67), which is now pending before the Court.

**THE PROPOSED SETTLEMENT**

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement amount not to exceed $6,000,000. (Doc. 67-1 at 18, Settlement § 3)

**I.        Payment Terms**

The settlement fund will cover payments to members of two classes: (1) the California Settlement Class comprised of "all non-exempt employees who worked for Weatherford in California" between August 28, 2010 and July 4, 2016 and (2) the FLSA Settlement Class including "all individuals who opted into the lawsuit during the notice period." (Doc. 67-1 at 16-17, Settlement § 1) In addition, the Settlement provides for payments to Class Representatives, Class Counsel, the Claims Administrator, and the California Labor & Workforce Development Agency. (*Id.* at 18; Settlement § 3.A) Specifically, the Settlement provides for the following payments from the gross settlement fund:

- Class Representatives will receive up to $10,000;

- Class Counsel will receive up to $1,500,000— which equals 25% of the gross settlement fund—and up to $55,000 for expenses;

- The Claims Administrator will receive up to $35,000 for fees and expenses; and

- The California Labor & Workforce Development Agency will receive $50,000 for PAGA civil penalties.

(Doc. 67-1 at 18, Settlement § 3) In addition, $156,000.00 of the gross settlement fund has been "designated as the 'FLSA Net Settlement Fund," to be paid to members of the FLSA Settlement Class only. (*Id.* at 19, Settlement § 4) After these payments have been made, the remaining funds – estimated to total $4,184,000.00 – will be distributed to California Settlement Class Members. (*Id.*)

**II.       Releases**

The Settlement provides that Plaintiffs and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, release Defendants from the claims arising in the class period. Specifically, the Settlement provides:

California Settlement Class members will release all claims pled in this Lawsuit or could have been pled in this Lawsuit and based on the factual allegations set forth in the Second Amended Complaint, including, but not limited to, any and all claims under California law for: (i) failure to pay overtime wages; (ii) failure to provide meal periods; (iii) failure to authorize and permit rest periods; (iv) wage statement penalties; (v) waiting time penalties; (vi) unfair competition; and (vii) civil penalties under the Private Attorneys General Act ("PAGA") (hereinafter collectively referred to as the "California Released Claims"). For members of the Settlement Class who do not opt out, the release period shall run from August 28, 2010 through the date of entry of a Preliminary Approval Order or July 4, 2016, whichever occurs first.

FLSA Settlement Class members will release all claims that are asserted or could have been asserted under the FLSA, based on Weatherford's alleged failure to pay all overtime wages based on a miscalculation of the regular rate of pay. For members of the FLSA Settlement Class, the release period shall run from actual date the individual opted in to the Lawsuit through the date of Preliminary Approval or July 4, 2016, whichever occurs first.

(Doc. 67-1 at 17, Settlement § 2)

The release for Plaintiffs encompasses more claims than the release of Class Members, including "all claims that are asserted or that could have been asserted in the Lawsuit, whether known or unknown, under federal law or state law against Weatherford arising out of their employment with Weatherford or the termination thereof.." (*See* Doc. 67-1 at 17, Settlement § 2.C)

### III.    Objections and Opt-Out Procedure

Any Class Member who wishes may file objections or elect not to participate in the Settlement. The Notice of Pendency of Class Action and Proposed Settlement ("the Notice") explains the claims that are released as part of the Settlement.  (Doc. 67-1 at 32-33)  In addition, the Notice explains the procedures for class members to request exclusion from the class and object to the terms of the Settlement.  (*Id.* at 33)

### PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is

1    within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

2    **I.      Conditional Certification of a Settlement Class**

3            Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which

4    provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf

5    of all." Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed classes are defined as:

6            **California Settlement Class**: all non-exempt employees who worked for Weatherford
             in California between August 28, 2010 through the date of Preliminary Approval or
7            July 4, 2016, whichever occurs first.

8            **FLSA Settlement Class**:  all individuals [who] opted into the lawsuit during the notice
             period.

9

10   (Doc. 67-7 at 16, Settlement § 1) Plaintiffs seek conditional approval of the classes for settlement

11   pursuant to Fed. R. Civ. P. 23, under which the Court may "make a conditional determination of

12   whether an action should be maintained as a class action, subject to final approval at a later date." *See*

13   *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

14           Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a)

15   are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores,*

16   *Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308

17   (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the

18   classes are maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v.*

19   *Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

20           **A.      Rule 23(a) Requirements**

21           The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed

22   by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147,

23   155-56 (1982).  Certification of a class is proper if:

24           (1) the class is so numerous that joinder of all members is impracticable; (2) there are
             questions of law or fact common to the class; (3) the claims or defenses of the
25           representative parties are typical of the claims or defenses of the class; and (4) the
             representative parties will fairly and adequately protect the interests of the class.
26

27   Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality,

28   typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

1                 1.      Numerosity

2         A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P.

3 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute

4 limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a

5 specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant*

6 *Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002)

7 ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained

8 class members . . . and listing thirteen cases in which courts certified classes with fewer than 100

9 members"). Here, 865 individuals opted in to the FLSA Settlement Class[1], and Defendants determined

10 there are 1,009 members in the California Settlement Class.[2] (Doc. 67 at 9-10) Therefore, the

11 numerosity requirement is satisfied.

12                 2.      Commonality

13         Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

14 The commonality requirement has been construed permissively; not all questions of law and fact need

15 to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is

16 insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

17 981 (9th Cir. 2011). Commonality must be shown by a "common contention" that is "of such a nature

18 that it is capable of classwide resolution—which means that determination of its truth or falsity will

19 resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S.

20 at 338. In this case, Plaintiffs contend:

21         [T]here are common questions of fact and law arising from Plaintiffs and the proposed
        California Settlement Class' employment with Weatherford, such as Weatherford's
22         alleged miscalculation of the regular rate of pay for overtime purposes, written meal and
        rest period policies and practices, and derivative waiting time, wage statement and PAGA
23         penalties – all of which Plaintiffs contend arise from a common core of salient facts.

24 (Doc. 67 at 29) Because the class members were subjected to uniform policies, and there are common

25

26      [1] The Notice indicates "875 individuals opted into the action." (Doc. 67-1 at 16). However, Plaintiffs report 851
individuals submitted timely opt-in forms and an additional 14 forms were received after the deadline was received, which
27 the parties "jointly agreed to accept ... as timely and valid." (Doc. 67 at 13-14) Accordingly, there are 865 individuals in
the FLSA Settlement class, and the Notice should be corrected to indicate the proper number of class members.

28      [2] The parties determined there are 97 individuals who are members of both the California Settlement Class and
the FLSA Settlement Class. (Doc. 67 at 10, n.3) Thus, the Settlement encompasses the claims of 1,777 individuals. (*Id.*)

questions concerning whether Defendants' policies violated California wage and hour laws capable of class-wide resolution, the Court finds the commonality requirement is satisfied.

### 3. Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Here, Plaintiffs were both employed by Defendants as non-exempt employees, and subjected to the same meal and rest break policies as the putative class members. In addition, Plaintiffs were subjected to the same overtime pay policies as the putative class members. Accordingly, the Court finds the typicality requirement is satisfied for the FLSA Settlement Class and the California Settlement Class.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a. Proposed class representative

Plaintiffs seek appointment as the Class Representatives of the Settlement Class, and assert that

7

they have "pressed forward claims for unpaid wages and related penalties resulting from Weatherford's allegedly unlawful wage and hour policies and practices." (Doc. 67 at 30)  Further, the parties do not report that there any conflicts between Plaintiffs and the putative class members.  Thus, it appears Plaintiffs will fairly and adequately represent the interests of the classes.

### b.    Proposed class counsel

Hernaldo Baltodano, Paul Haines, Tuvia Korobkin, and Fletcher Schmidt seek appointment as Class Counsel.  Proposed Class Counsel report that the "diligently litigated this case, undertook an extensive analysis of the claims and potential damages." (Doc. 67 at 31)  Further, Plaintiffs reports there are no conflicts between Class Counsel and members of the settlement classes.  (*Id.*)  Defendants do not oppose the appointment or assert Plaintiff's counsel are inadequate to represent the interest of the class.  Therefore, the Court finds the Hernaldo Baltodano, Paul Haines, Tuvia Korobkin, and Fletcher Schmidt satisfy the adequacy requirements.

### B.    Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiffs assert certification is appropriate under Rule 23(b)(3), which requires finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  According to Plaintiffs,

> Here, the primary issues with respect to the California Settlement Class are the miscalculation of the regular rate of pay, meal and rest period violations, and derivative penalties. Common issues predominate as to the regular rate miscalculation theory because all non-exempt employees were eligible to receive "wellness" bonuses, and the value of the "wellness" bonuses was never included in the regular rate of pay for purposes of calculating overtime pay, resulting in a systematic underpayment of overtime wages. These types of claims are routinely certified under Rule 23(b)(3). *See, e.g., Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (holding that district court abused its discretion in failing to certify a class action where class claim was predicated on a miscalculation of the regular rate of pay due to payment of non-discretionary bonuses); As to Plaintiffs' meal and rest period claims, because all members of the California Settlement Class were subject to the same uniform written policies, the claims of these individuals should also be found to predominate, especially at the settlement stage. *See e.g., Benton v. Telecom Network Specialists Inc.*, 220 Cal.App.4th 701, 726 (2013) ("We agree with *Bradley* and *Faulkinbury's* conclusion that, under *Brinker*, the fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the defendant's allegedly unlawful policy (or unlawful lack of a policy) is not a proper basis for denying certification").

8

> For these same reasons, common issues will also predominate with respect to Plaintiffs' derivative claims for wage statement, waiting time and PAGA penalties. *See, e.g. Bradley v. Networkers Internat.*, LLC (2012) 211 Cal.App.4th 1129, 1134, 1156, (the court held that the trial court erred in declining to certify the plaintiffs' overtime, meal- and rest-break claims, and that insofar as the plaintiffs' waiting-time penalty claims "were based on plaintiffs' overtime and/or meal and rest break claims, the court should have granted class certification on these claims.").

(Doc. 67 at 32-333).

Because Defendants' liability on the claims can be determined based on common evidence, the predominance requirement is satisfied. Similarly, the superiority requirement is satisfied because there is no evidence that the 1,777 individuals encompassed in the FLSA Settlement Class and California Settlement Class have any interest in individually pursuing the claims. Thus, certification of the conditional settlement classes is proper under Rule 23(b)(3).

## II.      Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the classes. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). In reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and citation omitted).

### A.      Strength of Plaintiffs' Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to

reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp 1379, 1388 (D. Az. 1989)).

Plaintiffs "steadfastly maintain that their claims are meritorious," but also "acknowledge that there were substantial risks and uncertainty in proceeding with class certification and trial." (Doc. 67 at 16)  For example, Plaintiffs report that Defendants argued its "employees in California were nonetheless properly authorized and permitted to take all required rest periods, and that managers were trained to authorize rest periods in compliance with California law." (*Id.*)  In addition, Defendants "argued that Plaintiffs lacked any common evidence on which to prove class-wide damages for rest period violations, necessarily defeating class certification of this claim." (*Id.*)  Further, Plaintiffs contend they "faced a significant obstacle in certifying their meal period claim based on the automatic-deduction, given that the inquiry of whether a meal period was actually taken in instances where the automatic-deduction applied would necessarily involve individualized inquiries on a member-by-member and shift-by-shift basis." (*Id.*)  Given the challenges identified by Plaintiffs, this factor weighs in favor of preliminary approval of the Settlement.

### B.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the proposed settlement were to be rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages.  Plaintiffs contend that though the parties "engaged in a significant amount of formal discovery and informal investigation and class-wide data analysis, additional written and deposition discovery remained prior to certification." (Doc. 67 at 17)  Plaintiffs assert that if they succeeded in certifying a class, "then formal merits-based discovery would also need to be conducted." (*Id.*)  Further, the parties would incur additional fees and costs through disputing class certification and trial. (*Id.*)  On the other hand, the proposed settlement provides for immediate recovery for the class.  Thus, this factor weighs in favor of preliminary approval of the Settlement.

### C.   Risk of Maintaining Class Status throughout the Trial

The parties stipulated to the certification of the FLSA Class, but Plaintiffs acknowledge the

10

collective action "still faced the prospect of decertification by Weatherford following additional discovery." (Doc. 67 at 18)  According to Plaintiffs, "Absent settlement, there was a risk that there would not be a certified class at the time of trial." (*Id.*) Due to the risk to the claims of class members, this factor supports preliminary approval of the Settlement.

### D.    Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Here, Plaintiffs report "participating members of the California Settlement Class will receive average payments of $4,146.68 and FLSA Settlement Class will receive average payments of approximately $181.18." (Doc. 67 at 10)  Plaintiffs assert that based upon the claims presented, they "predicted that their realistic total recovery for the California Settlement Class would be approximately $5,601,049, and approximately $156,000 for the FLSA Settlement Class, for a combined total of roughly $5,757,049." (*Id.* at 23; Doc. 67-1, Haines Decl. ¶ 21)  Therefore, "[t]he proposed settlement of $6,000,000 therefore represents approximately 104% of Plaintiffs' reasonably forecasted recovery." (*Id.*)  Accordingly, the Court finds the amount offered in settlement supports preliminary approval of the agreement terms.

### E.    Extent of Discovery Completed and Stage of the Proceedings

Plaintiffs assert that "[t]he parties engaged in a significant amount of formal discovery, as well as extensive informal class-wide discovery, investigation and analysis prior to reaching the proposed settlement." (Doc. 67 at 24)  Specifically, Plaintiffs report that "Weatherford produced timekeeping records for 783 class members, spanning from August 28, 2010 through March 28, 2016 (representing approximately 73% of all class-wide timekeeping records) and payroll records for 883 class members spanning the same time period (representing approximately 85% of all class-wide payroll records)." (*Id.*)  Further, Defendants produced "all applicable policies regarding overtime practices and meal and

rest period policies." (*Id.*)  Plaintiffs then engaged an expert to analyze the payroll and timekeeping data produced by Defendants." (*Id.*)

Given the discovery completed by the parties prior to mediation, appears that the parties made informed decisions, which lead to resolution of the matter.  Therefore, this factor supports preliminary approval of the Settlement.

### F.    Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Here, Plaintiffs assert they "are represented by competent and experienced counsel who possess extensive experience litigating wage and hour class actions from both the plaintiff and defense side and have been appointed as class counsel in numerous cases alleging similar claims." (Doc. 67 at 24)

Hernaldo Baltodano reports he has experience representing both plaintiffs and defendants in wage and hour class action litigation, and his "law firm is exclusively devoted to the practice of employment law." (Doc. 67-4 at 2, Baltodano Decl. ¶ 2; *see also id.* ¶¶ 2-9)  Mr. Baltodano asserts, "I have personally evaluated the strengths and weaknesses of Plaintiffs' claims, both as to class certification and the merits, and I believe that the proposed Settlement is an excellent result for the Settlement Classes." (Doc. 67-4 at 10, Baltodano Decl. ¶12)  Similarly, Paul Haines reports he has significant experience with class litigation, and believes "the proposed Settlement is an excellent result for the Settlement Classes." (Doc. 67-1 at 8, Haines Decl. ¶ 8; *see also id.*, ¶¶ 2-7) Accordingly, the views of both Class Counsel support preliminary approval of the Settlement.

### G.    Reaction of Class Members to the Proposed Settlement

Plaintiffs have agreed to the terms of Settlement Agreement.  (Doc. 67-1 at 26-27)  However, because Class Members have not yet received notice, this factor shall be revisited during and after the hearing for final approval of the Settlement.

### H.    Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  Plaintiffs note that the parties here "reached this settlement only after

12

1    mediating with Mark Rudy, one of the preeminent wage and hour class action mediators in California."

2    (Doc. 67 at 26)  Notably, the Ninth Circuit has determined the "presence of a neutral mediator [is] a

3    factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Products Liab.*

4    *Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Because there is no indication the agreement was the product

5    of collusive conduct, this factor weighs in favor of approval of the Settlement.

6    **I.       Attorneys' Fees**

7             Class counsel has requested attorneys' fees up to 25% of the gross settlement fund, for a total

8    of $1,500,000.  (Doc. 67-1 at 18, Settlement § 3.B)  The typical range of acceptable attorneys' fees in

9    the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.

10   *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

11            In general, the party seeking fees bears the burden of establishing that the fees and costs were

12   reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115,

13   1119 (9th 2000).  Therefore, a fee applicant must provide time records documenting the tasks

14   completed and the amount of time spent on the action.  *Hensley v. Eckerhart*, 461 U.S. 424, 424

15   (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007).  Because the

16   percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is

17   approved preliminarily.  The Court will determine the exact amount of the fee award upon application

18   by Class Counsel for approval of fees.

19   **J.       Class Representative Enhancement**

20            The Settlement provides that Plaintiffs may seek enhancement payments "up to" $10,000 each.

21   (Doc. 67-1 at 27, Settlement § 3.B(4)) Incentive awards, or enhancements, for class representatives

22   are not to be given routinely by the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

23            Indeed, '[i]f class representatives expect routinely to receive special awards in addition
             to their share of the recovery, they may be tempted to accept suboptimal settlements at
24           the expense of the class members whose interests they are appointed to guard."
             *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also*
25           *Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D.
             173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a
26           separate peace with defendants, grave problems of collusion are raised.").

27   In fact, "'excessive payments to named class members can be an indication that the agreement was

28   reached through fraud or collusion.'"  *Id.* (citation omitted).  In evaluating the enhancement award to a

1    class representative, a court should consider all "relevant factors including the actions the plaintiff has

2    taken to protect the interests of the class, the degree to which the class has benefitted from those

3    actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and

4    reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

5         The Settlement explains that the enhancement is to be given to Plaintiffs "in recognition of

6    their contributions to the Lawsuit and their service to the Settlement Classes." (Doc. 67-1 at 18,

7    Settlement § 3.B(4))  Plaintiffs report they "attended numerous in-person and telephonic meetings

8    with Plaintiffs' Counsel, provided documents and names of witnesses, and provided invaluable insight

9    and data regarding Weatherford's wage and hour practices." (Doc. 67 at 28, n.7)  However, Plaintiffs

10   have not provided any information regarding the time expended on these tasks.  Nevertheless, given

11   the flexibility for awards *up to* $10,000, preliminary approval of class representative enhancement

12   payments is appropriate.[3]

13                    **APPOINTMENT OF THE CLAIMS ADMINISTRATOR**

14        The parties have agreed upon and propose that the Court appoint Rust Consulting, Inc. as the

15   Claims Administrator.  (Doc. 67-1 at 21, Settlement § 7)  Under the terms of Settlement, the Claims

16   Administrator "shall be responsible for sending notices required under the Class Action Fairness Act

17   ("CAFA") and for calculating claims and preparing all checks and mailings." (*Id.*)  In addition, the

18   Claims Administrator will be responsible for receiving any exclusions forms from individuals who

19   wish to opt out of the action.  (*Id.*)

20        Rust Consulting estimates the expenses related to its responsibilities will be $32,252. (Doc. 67-

21   51 at 12).  Accordingly, the Settlement provides the Claims Administrator may receive up to $35,000

22   for its tasks.  (Doc. 67-1 at 18)  Based upon the recommendation of the parties, Rust Consulting is

23   appointed as the Claims Administrator.

24   _____

25   [3] Notably, class representative enhancements of $10,000 in this case appear to be excessive. *See, e.g., Wade v. Minatta Transp.* Co., 2012 U.S. Dist. LEXIS 12057 (N.D. Cal. Feb. 1, 2012) (finding the class representatives, who reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement" failed to justify an incentive award of $10,000); *see also*
26   *Alvarado v. Nederend*, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. Jan. 11, 2011) (awarding $7,500 to class representatives);
27   *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) (approving "incentive awards of $7,500 per class representative as compensation for their involvement in the case for the past five years, including appearing for depositions, assisting with written discovery, and working with Class Counsel to manage the
28   settlement process").  Accordingly, Plaintiffs provide further information—including specific tasks undertaken and the estimated time doing so— in seeking final approval of the Settlement to support the requested enhancement.

**APPROVAL OF CLASS NOTICE**

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

**I.     Content of the Notice**

Plaintiffs have submitted the proposed Notices—which provide  tailored instructions depending on whether the individual is a member of the California Settlement Class, FLSA Settlement Class, or both—and proposed Exclusion Form (collectively "Notice Packet").  (Doc. 67-1 at 29-47)

Upon review of the proposed Notice Packets, the Court finds the content is adequate.  Each Notice provides information regarding the background of the action and claims asserted.  The Notices explain the terms and provisions of the Settlement, including the payments from the gross settlement fund.  In addition, the Notices explain the rights and procedures to receive a share of the Settlement, object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines.  Finally, the Notice Packet explains the effect of the judgment and settlement.

**II.     Method and Administration of Notice Packet**

Within fourteen days after entry of this Order, Defendants will give the Claims Administrator the class data, including "the names, last known addresses, and social security numbers (in electronic format) of the members of the Settlement Classes, including the dates during which each was employed in a job covered by the Settlement Classes during each respective class period."  (Doc. 67-1 at 22, Settlement §9.A)  Within seven days of receiving this information, or twenty-one days after the date of service of this Order, the Claims Administrator will mail the Notice Packet to members of the Settlement Classes."  (*Id.*, § 9.B)  For any Notice Packet returned due to an incorrect address, the

Claims Administrator will search for a more current address and re-mail the Notice Packet.  (*Id.*, § 9.C)

Class Members who desire to be excluded from the action "must complete and deliver the Exclusion Form to the Claim Administrator within 60 calendar days of mailing.  (Doc. 67-1 at 22, Settlement § 9.D)  Similarly, Class Members who wish to object to the Settlement must mail a written objection to the Claims Administrator within 60 calendar days of mailing.  (*Id.* at 23, Settlement § 10) Class Members are informed objections must contain the individual's full name, last four digits of his or her Social Security number, and the basis for the objection.  (*Id.* at 33, 39, 45)  In addition, if an objector wishes to appear at the hearing, the intent to appear must be included in the written objection. (*Id.*)  Any objections received by the Claims Administrator shall be served upon both Class Counsel and Defendants' counsel, and shall be filed with the Court by Class Counsel within five business days of their receipt.  (*Id.* at 23, Settlement § 9.E)

**III.    Required Revisions to the Notice Packet**

The Notice Packet must be modified to include information in this Order, including the date of the hearing for Final Approval of Class Settlement, and deadlines for returning a request for exclusion form, and any opposition to the Settlement.  Likewise, the Request for Exclusion must be modified to include the relevant information.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement.  Moreover, preliminary approval of a settlement and notice is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)).  Here, the proposed Settlement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' request for conditional certification of the Settlement Classes is **GRANTED**, and the classes are defined as follows:

A.    **California Settlement Class**: all non-exempt employees who worked for Weatherford in California between August 28, 2010 through July 4, 2016.

B.    **FLSA Settlement Class**:  all individuals who opted into the lawsuit during the notice period.

2.    Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3.    The proposed notice plan is **APPROVED**;

4.    Stephanie Vega and Michael McNatt are **APPOINTED** the Class Representatives for the Settlement Classes;

5.    Hernaldo Baltodano of Baltodano & Baltodano LLP, and Paul Haines, Tuvia Korobkin and Fletcher Schmidt of Haines Law Group are **APPOINTED** Class Counsel;

6.    Rust Consulting, Inc. is **APPOINTED** as the Claims Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

7.    The Class Representative enhancement request for Plaintiffs is **GRANTED** preliminarily up to the amount of $10,000, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8.    Class Counsel's request for fees of not to exceed 25% of the gross settlement amount and costs up to $55,000 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9.    The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **November 4, 2016**;

10.   Costs of settlement administration shall not exceed $12,500;

11.   The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **July 29, 2016**;

17

12.   Defendants **SHALL** provide the Claims Administrator with the Class Data no later than within fourteen days of the date of service of this Order;

13.   The Claims Administrator **SHALL** mail the approved Class Notice Packet within twenty-one days of the date of service of this Order;

14.   A class member who wishes to be excluded from settlement shall postmark the Request for Exclusion within sixty days of the mailing of the Notice Packet;

15.   Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to the Claims Administrator within sixty days of the mailing of the Notice Packet;

16.   A Final Approval and Fairness Hearing is SET for **December 2, 2016** at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California.  At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

17.   Class Members may appear at the hearing **December 2, 2016**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

18.   The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **November 18, 2016**;

19.   The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

///

///

18

20.     The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   __**July 22, 2016**__                    _____**/s/ Jennifer L. Thurston**_
                                                                UNITED STATES MAGISTRATE JUDGE